

Signed/Docketed
May 30, 2012

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
## The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-29140 MER |
| JOHN ANSON BERTOLA ) | |
| ) | Chapter 7 |
| Debtor. ) | |

### ORDER

This matter comes before the Court on the Trustee's Objection to Debtor's Claimed Exemptions and the Debtor's Response. The issue before the Court is whether the proceeds of a sale of a residence retain their character as "proceeds" for exemption purposes if a debtor uses such proceeds to invest in stock before the expiration of the two-year limit on the proceeds exemption.

### JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), as it concerns the administration of the estate, and allowance or disallowance of exemptions from the estate.

### BACKGROUND FACTS[1]

On March 3, 2010, prior to filing his August 11, 2011 Chapter 7 petition, Debtor John Anson Bertola ("Bertola") sold his home. After all liens on the property were satisfied, Bertola received $172,852.92 in proceeds from the sale. Between April 19, 2010 and May 4, 2010, Bertola deposited $59,101.95 of the $172,852.92 into a brokerage account, thereafter purchasing shares of stock with a cost-basis of $58,725.80.[2] The $59,101.95 is the only portion of the total $172,852.92 that is at issue between the parties.

In his Schedule B, Bertola listed 3,500 shares of stock with a value of $37,310.00, and in his Schedule C, Bertola claimed the full value of the stock as exempt pursuant to

---

[1] The Court incorporates by reference the Joint Statement of Facts submitted by the parties at Docket No. 44.

[2] Bertola initially purchased 1,000 shares of stock in Barnes & Noble, Inc. and 20,000 shares of stock in E*Trade Financial Corp. The 20,000 shares of stock in E*Trade Financial Corp. were subject to a reverse split of ten to one, resulting in Bertola owning 2,000 shares. Bertola later sold all shares of stock in Barnes & Noble, Inc. for $19,515.67 and used most of those proceeds to purchase an additional 1,500 shares in E*Trade Financial Corp.

COLO. REV. STAT. § 38-41-207.[3]  Chapter 7 Trustee Taya Sweeden (the "Trustee") objects to the exemption of the value of the stock for two reasons.  First, she asserts the $58,725.80 lost its "proceeds" exemption protection under COLO. REV. STAT. § 38-41-207 upon conversion from money to stock.  Second, she argues the $58,725.80 cannot continue to be "proceeds" because Bertola failed to keep it separate from other funds.

For his part, Bertola asserts the money and the stock have always remained "proceeds" within the meaning of COLO. REV. STAT. § 38-41-207 because the property is easily traceable and Bertola disclosed its whereabouts.  In addition, Bertola maintains the funds in the brokerage account have never been commingled with any other funds because the brokerage account funds are held in the form of stock and separated from Bertola's other property.

## DISCUSSION

### A.     The Burden of Proof.

The objecting party bears the burden of proof on an objection to a claimed exemption.[4]  The standard of proof is by a preponderance of the evidence that the exemption was improper.[5]  Accordingly, the Trustee properly bears the burden to show Bertola forfeited his homestead exemption protection by converting the cash received from the sale of the home to stock.

The resolution of the dispute between Bertola and the Trustee requires the Court to evaluate: 1) whether the Colorado homestead exemption statute requires proceeds from a sale of the home to be kept in cash or whether the exemption protection is maintained even when a debtor converts the cash to other property, and 2) what is required to keep homestead proceeds separate and identifiable.  The Court must also bear in mind the State of Colorado mandates liberal construction of its exemption statutes.[6]

### B.     The Colorado Homestead Exemption and the Proceeds Statute.

COLO REV. STAT. § 38-41-201 (the "Homestead Exemption Statute") provides in pertinent part:

> (1) Every homestead in the state of Colorado shall be exempt from execution and attachment arising from any debt, contract, or civil obligation not exceeding

---

[3]  Bertola listed this as the value on the petition date.  The cost basis for the 3,500 of shares is $58,725.80.  Therefore, the value of the shares has depreciated.

[4]  FED. R. BANKR. P. 4003(c); *In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005).

[5]  *Hodes,* at 1010.

[6] Colo. Const. Art. 18, § 1; *Edson-Keith & Co. v. Bedwell*, 52 Colo. 310, 313 (1912).

> in actual cash value in excess of any liens or encumbrances on the homesteaded property in existence at the time of any levy of execution thereon:
>
> > (a) The sum of sixty thousand dollars if the homestead is occupied as a home by an owner thereof or an owner's family. . .

Thus, the Homestead Exemption Statute protects a limited dollar amount against execution and attachment to the extent the homeowner has equity in the home. The exemption extends for two years to the proceeds resulting from a sale of the home. COLO. REV. STAT. § 38-41-207 (the "Proceeds Statute") provides:

> The proceeds from the exempt amount under this part 2,[7] in the event the property is sold by the owner, or the proceeds from such sale under section 38-41-206 paid to the owner of the property or person entitled to the homestead shall be exempt from execution or attachment for a period of two years after such sale if the person entitled to such exemption keeps the exempted proceeds separate and apart from other moneys so that the same may be always identified. If the person receiving such proceeds uses said proceeds in the acquisition of other property for a home, there shall be carried over to the new property the same homestead exemption to which the owner was entitled on the property sold. Such homestead exemption shall not be valid as against one entitled to a vendor's lien or the holder of a purchase money mortgage against said new property.

Under these provisions, proceeds from the sale of a homestead property are exempt from execution or attachment for two years if the proceeds are kept separate and apart from others monies so the proceeds may be always identified.

**C.    The Purpose of the Homestead Exemption.**

As noted by the Colorado Court of Appeals:

> The primary purpose of such [the homestead exemption] is to secure to the householder a home for himself and his family, regardless of the solvency or insolvency of the family, *Woodward v. People's National Bank*, 2 Colo. App. 369, 31 P. 184 (1892); to protect the citizen householder and his family from the dangers and miseries of destitution consequent upon business reverses or upon calamities from other causes; to secure the permanent habitation of the family; and to cultivate the interest, pride, and affection of the individual, so essential to the stability and prosperity of government, *Barnett v. Knight*, supra. It has long been the policy of this state to preserve the home to the family, even at the sacrifice of just demands, for the reason that the preservation of the

---

[7] Part 2 refers to the $60,000 (or $90,000) exemption specified in COLO. REV. STAT. § 38-41-201.

> home is deemed of paramount importance. *McPhee v. O'Rourke*, 10 Colo. 301, 15 P. 420 (1887).[8]

"To that end, the homestead exemption is to be liberally construed to give effect to the statute's purpose."[9]

### D.     Application of the Proceeds Statute.

The Proceeds Statute is time-limited, requiring the use of homestead proceeds to obtain a new homestead within two years from the sale of the previous homestead. Under the plain language of the Proceeds Statute, the only requirement to obtain the exemption during the two-year period is the maintenance of the proceeds in a manner "separate and apart from other moneys so that the same may be always identified." If, within the two year deadline, a debtor uses the proceeds in the acquisition of other property for a home, the exemption continues, essentially "rolling over" into a new homestead exemption for the new property. If the debtor does not acquire other property for a home at the end of the two years, the exemption ceases to apply to the proceeds. The Proceeds Statute contains no requirement as to a debtor's intent to acquire a new homestead, and the Court will infer none here. If a new homestead is acquired within the time limit, a debtor must have had intent to do so. The Proceeds Statute does not require the Court to examine a debtor's state of mind throughout the two years. As long as the proceeds are kept separate and identifiable, the debtor can form the intent to acquire a new homestead at any time during the two years.

As to what constitutes "proceeds," in Colorado "[w]hatever is received by the Debtor when he sells his homestead property is 'proceeds' [and] includes whatever is received when collateral or proceeds is sold, exchanged, collected, or otherwise disposed of."[10] The cash Bertola received from the sale transaction thus constitutes proceeds, and the remaining question is how much he can change the character of the funds before they lose their status as exempt.

The Trustee argues it is permissible to keep cash proceeds in a segregated account, but impermissible to use the cash proceeds to purchase other property. The Trustee has not cited any case law for her position and the Court is unable to locate any authority on this issue. Rather, the Court finds the "continuum" analysis used by Judge A. Bruce Campbell of this Court helpful in analyzing this issue. Addressing what constitutes a "tool of the trade" for exemption purposes, Judge Campbell stated:

---

[8] Matter of Estate of Dodge, 685 P.2d 260, 263 (Colo. App. 1984).

[9] *Fleet v. Zwick,* 994 P.2d 480, 482 (Colo. App. 1999). *See also, In re Polimino,* 345 B.R. 708, 711-12 (10th Cir. BAP 2006).

[10] *In re Hoover*, 35 B.R. 709, 711 (Bankr. D. Colo. 1984) (using the 1984 definition of "proceeds" in COLO. REV. STAT. § 4-9-306(1) under the Uniform Commercial Code).

The question of whether, on the facts of this case, Debtor's truck qualifies as a machine or equipment of the debtor used for carrying on a gainful occupation is more difficult. Many workers use a motor vehicle they own in some fashion relating to their gainful occupation—most commonly, in getting to and from work. The mere use of a vehicle for transportation to and from work is not "use for carrying on a gainful occupation," as intended by the Colorado legislature in the exemption of section 13–54–102(I). This court concurs with the decision in *Van Winkle* that a truck driver's use of his rig is use for carrying on a gainful occupation. This is perhaps factually the easiest case at the end of the continuum where vehicle use is part of carrying on a gainful occupation. The lawyer who hauls his briefcase in his BMW is also an easy case—at the opposite end of the same continuum. The self-employed building contractor falls somewhere in between. On the specific facts of this case, as described above, this court concludes that this debtor's use of his pickup in his trade/business is close enough to the trucker's end of the continuum and far enough from the lawyer's end of the continuum to allow this pickup truck to qualify as exempt pursuant to COLO.REV.STAT. § 13–54–102(i).[11]

Similarly, in the case of what may be done with "proceeds" of a homestead sale, the spectrum extends from what the Trustee urges, simple placing of the funds in a segregated account, which clearly meets the Proceeds Statute's requirements, through engaging in "day trading" in risky investments, found by the United States Bankruptcy Court for the District of Arizona to constitute an abandonment of the exemption.[12] The case at bar falls between these two extremes. Although Bertola invested in stock, and suffered depreciation in value, there is no evidence these investments were particularly risky, nor did he engage in numerous investments. Further, by keeping the funds and the purchased stock in a segregated brokerage account, apart from other funds or property, Bertola complied with the Proceeds Statute's requirements for separation and identifiablity.

---

[11] *In re Black*, 280 B.R. 258, 260 (Bankr. D. Colo. 2002).

[12] In re White, 377 B.R. 633, 645 (Bankr. D. Ariz. 2007) (footnotes omitted). The *White* Court found:

> Although the Court does not support the Trustee's theory that the homestead proceeds must be used only for reinvestment in a new homestead, the facts of this case clearly support the Trustee's requested relief. The Debtor immediately placed the vast majority of his funds into a brokerage account from which he purchased, sold, or obtained a number of investments that were contrary to an intent to reinvest in a new homestead or any exempt property. Thus, the Debtor's claim of exemption in the net sale proceeds was appropriate at the time he filed his petition, so the Trustee could not, in good faith, object to his claim of exemption. However, the Debtor's subsequent and numerous trading activities in his investments were so contrary to the Debtor's claim of exemption in the homestead proceeds that the Debtor abandoned his claim of exemption to those proceeds. Moreover, the Debtor engaged in risky investments as evidenced by the Debtor's loss of funds over a relatively short period of time.

As noted above, the purpose of the Colorado homestead exemption is "to secure the debtor owning his residence," "to preserve the home for the family,"[13] to avoid destitution, "to secure the permanent habitation of the family," and "to cultivate the interest, pride, and affection of the individual."[14]  The Proceeds Statute affords a debtor a period of time to choose what to do with homestead proceeds to further advance this purpose.  There appears to be no precedent requiring a debtor to hold the "proceeds" in only one form, or face forfeiture of the homestead exemption benefit.  Instead, the Proceeds Statute allows a debtor who complies with its provisions two years to choose how to spend homestead proceeds–either to obtain a permanent exemption by using the proceeds to acquire a new homestead, or waive the exemption by using the proceeds for another purpose.

## CONCLUSION

Based on the above analysis and consistent with Colorado's Proceeds Statute, the Court concludes a finding that conversion in this case of homestead proceeds from cash to noncash property did not forfeit Bertola's homestead exemption.  Accordingly,

IT IS ORDERED the Trustee's Objection is OVERRULED.

Dated May 30, 2012                                  BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[13] *Fleet v. Zwick*, *supra*, at 482.

[14] *Matter of Estate of Dodge*, *supra*, at 263 (citing *Barnett v. Knight*, 7 Colo. 365 (1884)).